RICHARD M. DALEY, as Mayor of the City of Chicago and Local Liquor Control Commissioner, *et al.*, Plaintiffs-Appellees, v. AMERICAN DRUG STORES, INC., d/b/a Osco Drug, Defendant-Appellant (The License Appeal Commission of the City of Chicago, Defendant).

First District (4th Division)   No. 1—97—0152

Opinion filed February 26, 1998.

Morton Siegel and James L. Webster, both of Siegel, Moses, Schoenstadt & Webster, P.C., of Chicago, for appellant.

Brian L. Crowe, Corporation Counsel, of Chicago (Benna Ruth Solomon, Lawrence Rosenthal, and Carole Silver, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE SOUTH delivered the opinion of the court:

Defendant, American Drug Stores, Inc. (American), is the owner of all of the outstanding stock of both Jewel Food Stores, Inc. (Jewel), and Osco Drug (Osco). In 1993, American instituted a business plan to convert a number of Chicago area Jewel stores into Osco stores. One of the Jewel stores included in American's conversion plan is located at 1425 West Morse, Chicago, Illinois, which is the site at issue in this appeal.

Jewel held a package goods liquor license at the Morse store. The Morse store is located in an area covered by a moratorium on new liquor licenses, wherein the issuance of new package goods liquor licenses is prohibited pursuant to section 4—60—023 of the Municipal Code of Chicago. Chicago Municipal Code § 4—60—023 (1993).

On September 22, 1993, Osco forwarded a letter to the Local Liquor Control Commission (LLCC) requesting that the package goods liquor license at the Morse store be transferred from Jewel to Osco in the name of American. On December 6, 1993, the LLCC advised Osco that it would not approve its request to transfer the liquor license because it would constitute a "new" license in violation of the moratorium ordinance. Additionally, the LLCC stated that it found no special exception that would permit Jewel to transfer its license to Osco under the present ordinance. On July 22, 1994, the LLCC issued a written denial of Osco's application for the transfer.

Osco appealed the denial of its transfer application to the License Appeal Commission (LAC). Osco argued before the LAC that because of shared ownership in the package goods liquor license, the license could be transferred from Jewel to Osco under section 4—60—024(d) of the Municipal Code of Chicago. Chicago Municipal Code § 4—60—024(d) (1993). On March 7, 1995, the LAC reversed the LLCC's denial

of Osco's application. On June 23, 1995, the LLCC's petition for rehearing was denied by the LAC.

Thereafter, the LLCC filed a complaint in the circuit court for administrative review of the LAC's order. On December 18, 1996, following a hearing, the court entered an order finding that the decision of the LAC was against the manifest weight of the evidence and reversed the LAC's order. Osco appeals. We affirm the order of the circuit court.

■ The sole issue presented in this appeal is one that raises a question of ordinance interpretation; that is, a question of law. Thus, the appellate court conducts a *de novo* review and construes the ordinance independently without deference to the circuit court's judgment. *Villegas v. Board of Fire & Police Commissioners of the Village of Downers Grove*, 266 Ill. App. 3d 202, 639 N.E.2d 966 (1994), *rev'd on other grounds*, 167 Ill. 2d 108, 656 N.E.2d 1074 (1995).

■ In construing an ordinance, the court's objective is to ascertain and give effect to the overall intent of the drafters. The most reliable indicator of the drafters' intent is the language of the ordinance. The language of the ordinance must be given its plain and ordinary meaning. Where the language is clear and unambiguous, the court must enforce the law as enacted, without employing extrinsic aids to construction. *Villegas*, 266 Ill. App. 3d 202, 639 N.E.2d 966, *rev'd on other grounds*, 167 Ill. 2d 108, 656 N.E.2d 1074.

■ In the present case, the plain language of section 4—60—023 of the Chicago Municipal Code prohibits the transfer of the package goods liquor license from Jewel to Osco unless Osco qualifies under an exception set forth in section 4—60—024 of the Code. Chicago Municipal Code §§ 4—60—023, 4—60—024 (1993).

Section 4—60—023 of the Chicago Municipal Code provides in pertinent part:

> **"Restrictions on additional package goods licenses.**
>
> Subject to the provisions of subsection 4—60—021(c), no additional package goods license shall be issued for any premises located within the following areas: ***." Chicago Municipal Code § 4—60—023 (1993).

The ordinance goes on to list by address designated areas within each ward where the moratorium is imposed. The site at issue in this appeal, 1425 West Morse, Chicago, is within the moratorium area. See Chicago Municipal Code § 4—60—023 (1993).

The Chicago city council created limited exceptions to the license prohibition through its enactment of section 4—60—024 of the Code, which provides in pertinent part:

"**Lapse of license—Transfer of interest.**

Whenever the liquor license for a premises located within an area described in Sections 4—60—022 or 4—60—023 lapses for failure to renew or is revoked for cause, no new license shall be issued for that premises ***. No direct or indirect interest in the ownership of a liquor license for a business in an area described in Section 4—60—022 or 4—60—023 may be transferred unless the transfer is made (a) between spouses, legally married to each other at the time of the application for transfer; or (b) between parent and natural or adopted child or children; (c) to another person or persons by will or by intestate succession; or (d) *to another person or persons who already share ownership in the license, or involves the transfer of less than five percent of the shares of the corporation.* ***

Transfers described in clause (d) of this section shall be subject to the following restriction: no person to whom less than five percent of the shares of a liquor license is transferred, who did not share ownership in the license prior to such transfer, may purchase more than five percent of the shares of the liquor license in any 12-month period." (Emphasis added.) Chicago Municipal Code § 4—60—024 (1993).

On appeal, Osco contends that the circuit court erred in holding that Osco did not fall under the "shared ownership" exception set forth in section 4—60—024(d). Chicago Municipal Code § 4—60—024(d) (1993). In support of this contention, Osco argues that (1) the emphasis of section 4—60—024(d) is on "ownership" rather than on the name listed on the license and, therefore, the fact that Jewel and Osco are wholly owned subsidiaries of the same parent company, American, qualifies Jewel to transfer the liquor license to Osco without being subject to the moratorium restriction; (2) the separate corporate existence of Jewel and Osco does not preclude the application of the "shared ownership" exception in section 4—60—024(d); (3) the fact that the Internal Revenue Service treats American, Jewel and Osco as a single taxing entity further evidences that shared ownership exists between the companies; and (4) section 4—60—024(d) should be interpreted to avoid a "chilling effect" on businesses willing to invest in Chicago.

In Illinois, a corporation is deemed a distinct legal entity, separate from other corporations with which it may be affiliated. *Flynn v. Allis Chalmers Corp.*, 262 Ill. App. 3d 136, 634 N.E.2d 8 (1994). Before a court will pierce the corporate veil of a subsidiary corporation, it must be shown that one corporation so controls the affairs of another that the other is the mere instrumentality or dummy of another and that, under the circumstances, the observance of the fiction of separate corporate existence will sanction fraud or injustice. *Flynn,*

262 Ill. App. 3d 136, 634 N.E.2d 8. The supreme court has recently held that a corporation may not pierce its own corporate veil. *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 632 N.E.2d 1015 (1994).

■ In this case, there is nothing in the record that indicates that Jewel or Osco so controls the affairs of the other that one corporation is the mere instrumentality or dummy of the other and that, under the circumstances, the observance of the fiction of separate corporate existence will sanction fraud or injustice. Absent such evidence, Jewel and Osco are deemed two separate and distinct corporate entities. This holds true despite the fact that both are wholly owned by the same parent corporation, American.

Moreover, as cited by the circuit court, the ownership of capital stock of one corporation by another does not necessarily render the stock-holding corporation the owner of the property of the other. *Logal v. Inland Steel Industries, Inc.*, 209 Ill. App. 3d 304, 568 N.E.2d 152 (1991). A corporation is considered separate from its stockholders, officers, directors and other corporations with which it may be connected for purposes of determining its assets and liabilities. *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 632 N.E.2d 1015.

Here, Jewel originally applied for the package goods liquor license as the sole applicant, and the license was issued in the name of Jewel only. Thus, the fact that Jewel and Osco are owned by the same parent company, American, does not result in Osco having shared ownership interest in Jewel's package goods liquor license.

Additionally, the fact that the Internal Revenue Service requires controlled corporations to consolidate their income for tax purposes is not determinative of their independent status as separate corporate entities. *In re Bowen Transports, Inc.*, 551 F.2d 171, 178-79 (7th Cir. 1977). Consequently, the tax definition of a controlled group of corporations does not serve to pierce Jewel's or Osco's corporate veil and destroy their independent status as separate corporate entities.

As to any "chilling effect" the ordinance may have on businesses willing to invest in Chicago but unable to obtain a liquor license in a moratorium area, the Chicago city council has weighed the costs of the moratorium and determined that public health and safety issues warranted the enactment of sections 4—60—023 and 4—60—024. Chicago Municipal Code §§ 4—60—023, 4—60—024 (1993). Such considerations are for the city council to make. *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 262-63 (7th Cir. 1995).

Accordingly, as separate and distinct corporations, notwithstanding their common affiliation with American, Osco did not share owner-

ship in Jewel's package goods liquor license at the Morse store location before the proposed transfer. Because section 4—60—024(d) makes clear that the package goods liquor license can only be transferred to one who already shares ownership in the license, transfer of the license from Jewel to Osco would constitute a new license in violation of section 4—60—023 of the Chicago Municipal Code. Chicago Municipal Code § 4—60—023 (1993).

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

CERDA, P.J., and McNAMARA, J., concur.